UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                )
JOHN DOE                        )
                                )
                     Plaintiff, )
                                )
          v.                    )     Civil Action No._____
                                )
AMERICAN UNIVERSITY et al.      )
                                )
                                )
                    Defendants. )
_____ )

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUCTION

For the reasons set forth in detail in the accompanying supporting memorandum, plaintiff Doe respectfully requests the Court to grant the requested relief, including a temporary restraining order, as well as a preliminary and permanent injunction.

Dated: November 15, 2006

                          SHARP & ASSOCIATES


                          _____/s/_____
                          Stephen W. Grafman (32912)
                          William F. Boyer  (479421)
                          1215 19th Street, N.W.
                          Washington, D.C,.  20036
                          Tele: (202) 467-4114
                          Fax: (202) 467-1625

                          *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
JOHN DOE                              )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )    Civil Action No._____
                                      )
AMERICAN UNIVERSITY et al.            )
                                      )
                                      )
                    Defendants.       )
_____)

PLAINTIFF'S MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff John Doe submits this memorandum in support of his application for a temporary restraining order and preliminary injunctive relief.  He adopts and incorporates his verified complaint filed simultaneously herewith.

Plaintiff seek emergency relief to enjoin the Defendants from holding the Ad Hoc Conduct Council Hearing (the "Hearing") currently scheduled for this Thursday November 16, 2006, at 1 pm, in derivation of his right to a fair and equitable hearing.

I.    BACKGROUND

    A.    Factual Predicate

Doe is a 21 year old junior at the American University ("AU") charged with the alleged rape of an AU undergraduate

(the "Female Student")[1] on the late night/early morning
hours of September 19/20, 2006 in what was by no means a
chance encounter.  Indeed, they had engaged in consensual
intercourse the previous evening,[2] and the following evening
(i.e. the time of the alleged rape)[3] she returned
voluntarily to Doe's off-campus home around 11:30 pm, after
an instant message exchange.

The now-disputed intercourse took place in Doe's
bedroom just as it had the night before.  Both acknowledge
the incident was preceded by drinking.  Female Student
stated in her instant message to Doe preceding sex that she
had been engaged in a beer-drinking "power hour" with her
girlfriends, and after further drinking with Doe she
voluntarily went to his bedroom.  What occurred thereafter,
Female Student now calls rape.  Doe vehemently disputes
this allegation.

Female Student made a report of the alleged rape to
the campus police (that is the AU Department of Public
Safety), who in turn notified the Washington, D.C.

---

[1] The name of the Female Student is omitted as a courtesy, and is not in
any way an indication as to the probity of her complaint.

[2] Interestingly the judicial complaint form makes no mention of this
previous evening.

[3] If found responsible Doe could be expelled from school, and a
transcript of the proceedings made available to the Metropolitan Police
Department.  A conviction for rape in the District of Columbia can
result in a sentence of up to life in prison

Metropolitan Police Department.  Notwithstanding that Female Student claimed she was struck in the face with a full closed fist by Doe, Defendant Beltz advised there are no photographs, no medical examination reports and no physical evidence.[4]  Moreover, the Female Student declined to press charges, and seemingly only changed her mind after further discussions with a girl friend who first advised the campus police that she "may" have changed her mind.

It was not until 10 days later that there appears an <u>unsigned</u> 2 page typed single spaced "Confidential Statement" addressed to JAMS (the AU Judicial Affairs and Mediation Services) with a copy shown to the campus police officer Sergeant Sigfri.[5]

Subsequently an AU Judicial Complaint was prepared on October 2, 2006, with Sgt Sifri was the complaining witness rather than the Female Student, the allegedly aggrieved party.  The unsigned statement advises that Female Student would not attend the Hearing.[6]

---

[4] November 1, 2006 letter from Katsura Kurita Beltz, the AU Director of Judicial Affairs and Mediation Services.

[5] It is unclear who prepared this statement since it is unsigned, and further the Judicial Complaint Form formally initiating the student proceedings was not signed until October 2, 2006.

[6] Specifically the statements advises: "I am writing this statement in place of my presence at the hearing.  Given the arduous circumstances, I am unwilling and unable to face the emotional and physical stress of presenting myself before my attacker; therefore I give my full permission to Sergeant Sigfri to speak on my behalf."

B.    The Hearing Procedure

The Hearing is convened pursuant to the AU Student Conduct Code ("SCC")[7] which specifies at SCC-XV that, among other things, it applies to students accused of nonacademic offenses "that will likely result in sanctions...such as dismissal from school".[8]

The procedures tightly control the manner in which a hearing may be held, and raise significant issues as to whether a student may fully and fairly defend against such serious allegations as rape, including, but not necessarily limited to the following:

i. No right to legal counsel

The SCC expressly prohibits a student from having lawyer representation at the Hearing, specifying at SCC-XI "participation of persons acting as legal counsel is not permitted." According to the SCC, this is justified because at issue is a disciplinary process "to provide fair review of alleged violations" rather than "formal legal determinations."

The SCC does allow for an "advisor" who can be an AU

---

[7] A copy of the SCC is attached hereto as Exhibit 1.

[8] SCC-XVI G. defines "Dismissal" as "permanent termination of student and exclusion from university premises, privileges and activities. This action will be permanent and recorded on the student's academic transcript."

student, faculty, or staff member; yet even then the advisor "may not address hearing bodies, speak in disciplinary conferences, or question witnesses." SCC-__

       ii. <u>No guaranteed right to confront one's accuser</u>

Paragraph SCC-L specifies that "[c]omplainants and respondents will be afforded an opportunity to ask relevant questions of witnesses who testify at the hearing." However, there is no subpoena power, and where as here, a decision is made to have a stand-in complainant for the alleged aggrieved party, there is no ability to confront the accuser.

      iii. <u>Absence of a neutral and detached hearing process</u>

The procedure for case resolution provides the Director of the Judicial Affairs and Mediation Services ("JAMS") with overarching authority in what then becomes an inherently flawed process, tilted in favor of the accuser who may or may not be present. This is seen in, among other contexts, the powers of the JAMS Director to:

     (i)    decide whether a case will go to a haring (SCC-XV C.)

     (ii)   train the panel of potential members

     (iii)  select the actual members for any particular panel to be composed of five persons, three

students, on faculty member, and one staff

member (SCC-X A.)

(iv)    suspend panel members from their positions and

otherwise disqualify them (SCC-X D. & SCC-XV

G.)

(v)    serve as hearing officer with right to

participate in hearing panel deliberations and

discussions (albeit not vote)

(vi)    be responsible for final decisions on all

procedural issues and may modify hearing

procedures "to ensure a fair, expedient

administration of the hearing." (SCC-XV _)

(vii)    exercise control over the proceedings (SCC-XV

E.)

II.    ANALYSIS OF THE ISSUE: THE STUDENT CONDUCT CODE AS

IMPLEMENTED IN THE INSTANT CASE IS INEQUITABLE AND

VIOLATIVE OF THE EDUCATION ACT OF 1972 AND

IMPLEMENTING AUTHORITY, AND SAID VIOLATIONS ARE OF A

CONSTITUTIONAL MAGNITUDE

A.    Title IX Mandates an Equitable Hearing

In student disciplinary proceedings, it is recognized

that the constitutional rights of a student may turn upon

whether the school at issue is deemed to be a public or

private institution of higher learning.  That is, the

panoply of rights available to a student can at times turn

upon whether he/she is enrolled in a publicly or privately

funded school, with students at publicly funded schools

afforded greater rights than those at private institutions.

Yet while this public / private dichotomy often is the

beginning of the judicial analysis, it is not necessarily

the end.  Indeed, as cogently stated in what is perhaps the

leading treatise on education law, <u>The Law of Higher</u>

<u>Education</u>[9], at section 1.5.3:

> The inapplicability of the federal Constitution to
> private schools does not necessarily mean that
> students, faculty members, and other members of the
> private school community have no legal rights
> assailable against the school.  There are other
> sources of legal rights, and these sources may
> sometimes resemble those found in the Constitution.

Thus while one may argue as to whether American

University is a public or private institution,[10] it really

makes no difference in the extant situation. That is,

regardless of whether private or public, AU is subject to

the Education Act of 1972, to wit: 20 U.S.C. § 1681 et seq.

through which Congress has banned discrimination in higher

education based upon sex.  This is sometimes thought of

---

[9]  William A. Kaplan and Barbara A. Lee, <u>The Law of Higher Education</u>,,
The Jossey-Bass Publishing, San Francisco, 2006.
[10] American University owes its legal existence to the federal
government having been chartered by a special act of Congress in 1893
(27 Stat. 476).  It is not privately incorporated, and whatever
authority it has to function arises from its federal existence.

most commonly in the context of intercollegiate sports
(often referred to as Title IX), yet Title IX through the
1972 Act reaches far beyond this and directly impacts to
all schools that receive federal funding assistance,
including federal student financial assistance and research
grants.

Indeed as observed in the Kaplin and Lee treatise
referenced above, this legislation "parallels and in some
way is more protective than the equal protection provision
of the 14th Amendment." Id., at section 13.5.2 and 13.5.3.

While a private university might opt to turn down
federal funding, most do not; and in any event for purposes
of the matter *sub judice* it is clear that AU does not
reject such funding, nor does it wish to even run the
"risk" of loosing such funding.[11]

In implementing the 1972 Education Act, the Department
of Education has published regulations stating what
recipients of federal funding must do to be in compliance

---

[11]  See e.g. the following statement on the AU website at
http://www.american.edu/careercenter/employers/recruitingpolicies.html
where it is stated:

> "…we [AU] are compelled by law (the Solomon Amendment) to allow
> the U.S. military to recruit on campus, or risk the loss of all
> federal funding assistance, which includes federal student
> financial assistance and research grants."

Lest there be any question as to the constitutionality of such a
provision whether relating to the military or otherwise, this matter
was resolved in the government's favor in Rumsfeld v. Forum for
Academic and Institutional Rights, Inc.  _____ U.S. _____ (March 6,
2006).

recipients of federal funding must to do comply with the law. These regulations are found in Title 34 of the C.F.R. Part 106, and more specifically for purposes of the matters at issue at 34 C.F.R. 106.8 which states:

> A recipient[12] shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

These "equitable" procedures thus mandate for education institutions receiving federal funding encompass procedures to hear and resolve complaints of sexual discrimination now generally recognized to include acts not only sexual harassment, but sexual assault as well. Such procedures, if they are to be equitable must also encompass equitable procedures for an individual accused as well as accuser. While judicial authority addressing this issue is scant, [13] it virtually goes without saying that a procedure that is not "equitable" to both accused and accused is inherently inequitable.

B.    The Inequity of the Student Conduct Code

The SCC does not provide for the requisite "equitable"

---

[12] A recipient is defined in these regulations at 34 C.F.R.106..2 (i) to include "any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or though another recipient and which operates an education program or activity which revives such assistance, including any subunit, successor, assignee, or transferee thereof." AU is clearly such an institution.

[13]    See generally, _____Procedural Fairness at Private Universities _____ at p. 49

procedures, either in basic structure or in implementation. In short, the Code while using politically correct language such as 'fairness' or 'student due process', it simply does not live up to the verbiage. The more serious of these deficiencies are referenced in the accompanying verified complaint in paragraphs _____ through _____ which are adopted and incorporated herein by reference, and as discussed previously herein

One really need not go further then to recognize that if the SCC allows a claim as serious as rape to be pursued against Doe with no opportunity to face his accuser, the resulting proceeding is anathema to a civilized society . Whether a public school, a private school, or just as an issue of equity and of fundamental fairness, denying the right of confrontation is nothing short of outrageous.

The Supreme Court has addressed this confrontation issue on various occasions, and has emphasized the critical importance inherent in the right to face one's accuser. See, e.g. Coy v. Iowa, 487 U.S. 1012 (1988). Among the many cogent and compelling reason the Court noted is to allow the fact finding panel to observe the demeanor of the one making the accusations. This becomes critically important here since this case is at best a "she said / he said" situation whether it is impossible to reach a fair

and equitable determination of credibility when one does not have both he and she.

The absence of the right to counsel is likewise appalling in the context of this case where the potential consequences can reach far beyond the confines of American University in terms for example of the potential life-long impact of expulsion for college and criminal charges predicated no doubt in large measure on a transcript that can be made of these proceedings.

Perhaps the First Circuit said it best in a factually distinct yet analogous student hearing where the Court stated that "the risk involved in participation at the hearing is substantial with counsel present; without counsel it is enormous,." Gabrilowitz v. Newman, 582 F.2d 100, 106 (1st Cir. 1978)

Combining the lack of a right to confrontation with a lack of the presence of counsel, and it can be seen that the word "equitable" in the context of the instant AU proceeding is oxymoronic.  Yet, there is still more, the role of the JAMS Director is even more troublesome.  She assumes virtually every conceivable role in these proceedings:  she plays active role in the referral of the charges to a student hearing, she trains those who may wish to set on panels and then selects those for what case or

case she believes would be appropriate; serves at the presiding officer at the hearing ruling on all procedural matters, and then actively deliberates with the panel, albeit she does not vote.

The active role played by the defendant JAMS director in the instant case is rather illustrative.  Among other things, she has denied Doe a continuance for further preparation;, denied him the right to the presence of counsel, and refused to provide information about who participated in the drafting of  Female Statement and as to the identify of panel members. Moreover, although the JAMS Director pursuant to SCC-XV A "may modify hearing procedure, if necessary, to ensure a air and expedient administration of the hearing", she had declined to do so.

What we have here is a situation where the SCC suffers from a fatal flaw. One simply can not equitably be involved in the prosecution decision, the training of a panel, a participant in the deliberations, and a judge all at the same time. The conflicts are inherent.  Just as an arrest warrant must be issued by a "neutral and detached magistrate[,]" Johnson v. United States, 333 U.S. 10, 13-14 (1948), so too fact finding even in a student hearing of this nature, must be decided by those who are truly neutral and detached.  Cf. Coolidge v. New Hampshire, 403 U.S. 443

(1971).  Indeed, this is particularly so in the instant
context where the hearing officer conducting the hearing
sits with the panel in deliberations making the decisions.
To say the JAMS director can be present, but not vote cures
nothing and is at best a band-aid for a deeply infected
wound.  Indeed, as early as 1894 the Supreme Court spoke in
words equally applicable today's situation where it stated
in Starr v. United States: "the influence of the trial
judge [here the hearing officer/JAMS director] on the jury
[here the panel members] is necessarily and properly of
great weight, and that his [her] lightest word or
intimidation is received with deference and may prove
controlling."  153 U.S. 614, 626 (1894).  Whether taken
singularly or collectively, the result of these various
deficiencies is patently obvious, leading to the conclusion
that Doe can not get a n equitable hearing under the
circumstances at hand.

III. TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF SHOULD BE
     GRANTED

     The criteria in this jurisdiction for granting
temporary and preliminary injunctive relief are well-
established, as follows, encompassing:

(1)      irreparable harm to the moving party if an
         injunction is not granted;

(2)        substantial likelihood of success on the merits

           of the lawsuit;

(3)        where lies the balance of injuries between the

           parties; and

(4)        wherein lies the public interest.

See, e.g., CityFed Financial Corp. v. Office of Thrift

Supervision, 58 F.3d 738, 746-47 (D.C. Cir. 1995);

Washington Metropolitan Area Transit Comm'n ("WMATA") v.

Holiday Tours, Inc., 559 F.2d 841, 843-844 (D.C. Cir.

1977); Virginia Petroleum Jobbers Ass'n v. Federal Power

Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Petties v.

District of Columbia, 881 F. Supp. 63, 65 (D.D.C. 1995).

        Whether to grant temporary and preliminary injunctive

relief requires an analysis of all four factors based on

"the balance of equities."  WMATA, 559 F.2d at 844; see

also CityFed, 58 F.3d at 747 ("If the arguments for one

factor are particularly strong, an injunction may issue

even if the arguments in other areas are rather weak.").

Doe meets all of the criteria.

    A.    Plaintiff Will Suffer Irreparable Harm Without An

          Injunction

        Plaintiff will suffer irreparable injuries in the

absence of injunctive relief.  If the Hearing proceeds as

scheduled he will be deprived of the right to counsel, the

right to confront his accuser, the right to a neutral
hearing / hearing officer, and stands the possibility of
being tainted for life as the result of this grossly unfair
and equitable proceeding.

    B.    <u>Doe Has a Substantial Case with Strong Likelihood
        of Success on the Merits</u>

    To meet this criteria, Doe need show only "a
substantial case on the merits," where, as here, the other
criteria favor injunctive relief.  <u>See</u> <u>Megapulse, Inc. v.
Lewis</u>, 672 F.2d 959, 970 & n.56 (D.C. Cir. 1982); <u>WMATA</u>,
559 F.2d at 843; <u>Barnstead Broadcasting Corp. v. Offshore
Broadcasting Corp.</u>, 865 F. Supp. 2, 5-6 (D.D.C. 1994).

    Title IX of the Education Act of 1972 guarantees the
right to a "prompt and equitable" hearing when charged with
sexual assault, 34 C.F.R. Part 106.8(b), and Plaintiff may
bring suit to enforce his rights.  <u>See</u>, <u>e.g.</u>, <u>Cannon v.
University of Chicago</u>, 441 U.S. 677 (1979) (recognizing
private cause of action for Title IX violation); <u>Gebser v.
Lago Vista Independent School District</u>, 524 U.S. 274 (1998)
(upholding award of monetary damages for Title IX
violation).  Though the word "equitable" is somewhat
imprecise, courts have used it interchangeably in other
circumstances with notions of due process.  <u>See</u>, <u>e.g.</u>, <u>In
re Combustion Engineering, Inc.</u>, 391 F.3d 190, 234 fn.45

(3rd Cir. 2004) ("Many of these requirements are specifically tailored to protect the due process rights of future claimants.  For example, a court employing a § 523(g) channeling injunction must determine that the injunction is "fair and equitable[.]"); see also 34 C.F.R. § 104.7(b) (directing recipients of federal funds to adopt grievance procedures that "incorporate appropriate due process standards that provide for prompt and equitable resolution of complaints[.]").  Though precedents addressing the violations challenged herein are few and far between, those that exist favor the granting of relief to plaintiff.

First, courts recognize that students facing academic disciplinary hearings for alleged criminal conduct have, at a bare minimum, the right to have an attorney present to advise them during the academic disciplinary hearing.  See, e.g., Gabrilowitz v. Newman, 582 F.2d 100 (1st Cir. 1978).  In Gabrilowitz, as here, the court was asked to enforce the right of the student to have counsel present at the disciplinary hearing because the factual predicate of that hearing was the same as that which could (and did) serve as the basis for criminal charges.  See Gabrilowitz, 582 F.2d 104-05.  The court observed: "If appellee chooses not to risk self-incrimination, he risks loss of his college

16

degree.  If he chooses to protect his degree, he risks
self-incrimination and possible imprisonment[.]"
Id. at 105.  The Court of Appeals continued, quoting
approvingly the District Court's observation that "[t]he
consequences of this plaintiff's participation in what
otherwise might be strictly a University affair, reaches
well beyond the University walls in terms of potential
effect upon this plaintiff."  Id. at 106.

Second, it is indisputable that for this proceeding to
be equitable Doe must have the opportunity to confront and
cross-examine his accuser.  Derived both from the Sixth
Amendment's Confrontation Clause as well as "our
understanding of its historical roots[,]" the accused is
guaranteed the right to personally examine his accuser, who
must be present, under oath, subject to cross examination,
and whose demeanor is capable of being observed by the
trier of fact.  Maryland v. Craig, 497 U.S. 836, 844-46
(1990).

The right to confrontation is a bedrock principle
enshrined in the Constitution and understood to be an
indispensable requirement for the just and equitable
resolution of a dispute such as this.  See Mattox v. United
States, 15 U.S. 237, 242-243 (1895) ("the accused has an
opportunity, not only of testing the recollection and

17

sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.").

In a case where the evidence amounts to nothing more than a swearing match between two persons, one of whose futures hangs in the balance, the right of confrontation assumes even greater importance.  See Winnick v. Manning, 460 F2d 545, 550 (2d Cir. 1972) (observing that even where the right to cross examination is not ordinarily guaranteed, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." (citation omitted)).  Where, as here, it comes down to a choice between believing an accuser and an accused, cross-examination is absolutely essential.  See Flaim v. Medical College of Ohio, 418 F.3d 629, 641 (6th Cir. 2005). This right cannot be dispensed with in this instance if the hearing is to be equitable under any circumstance or interpretation of that word.

Finally, the hearing is inequitable and violates Doe's due process rights inasmuch as he is denied the right to a fair and impartial hearing officer.  In the instant case,

the hearing officer receives the complaint from the allegedly aggrieved party, collects the evidence from the aggrieved party's witnesses, informs the accused party of the charges being brought against him, solicits from the accused party his account of the incident in question, selects the panel, trains the panel, instructs the panel on the standard by which it is to judge Doe, makes rulings during the proceeding, and finally deliberates with the panel.  In short, the hearing officer acts as policeman or "street officer", detective, prosecutor, and judge throughout the proceeding.  In no way is the hearing officer impartial – the system forecloses that possibility.

   C.    The "Balance of Injuries" Favors An Injunction

   Plaintiff will be severely injured by the deprivation of his right to an equitable hearing which meets the minimum standards of due process, as requested herein. No injury whatsoever will result to Defendant American University from the issuance of a temporary and preliminary injunction.  See McLaughlin v. Massachusetts Maritime Academy, 564 F.Supp. 809, 812 (D.Mass. 1983) (finding that "the public interest will not be affected adversely by the grant of injunctive relief" where academy denied student's request to have attorney present at disciplinary hearing). The injunction would merely require that AU afford Doe the

minimum rights necessary to an equitable hearing as noted
herein.  Id. at 812-13.  This is not to much to ask, and
this Honorable Court should grant the same.  See, e.g.,
Crowley v. United States Merchant Marine Academy, 985
F.Supp.292, (E.D.N.Y. 1997) (ordering academy to permit the
accused student's attorney to be present throughout the
hearing and to allow the accused student to confer with him
during the hearing.); McLaughlin, supra, 564 F.Supp. at
812-13.


        D.    The Public Interest Will Be Served By An
              Injunction

        The public interest considerations favor the issuance
of temporary and preliminary injunctive relief in favor of
plaintiffs, as Doe will suffer irreparable injury while the
"public interest will not be affected adversely by the
grant of injunctive relief."  McLaughlin, 564 F.Supp. at
812.  Affording citizens the right to an equitable hearing
which protects their rights unquestionably serves the
public interest.  As such, an injunction should be granted.

III. CONCLUSION

        Doe satisfies all of the criteria for granting
temporary and preliminary injunctive relief.  Accordingly,

he respectfully requests that this Court temporarily and

preliminarily enjoin the Defendants, as well as those

associated therein and/or working in conjunction therewith

from proceeding with the disciplinary hearing.

Dated:    November 15, 2006

                                SHARP & ASSOCIATES


                                _____/s/_____
                                Stephen W. Grafman (#32912)
                                William F. Boyer (#479421)
                                1215 19th Street, N.W.
                                Washington, D.C. 20036
                                Tele. (202) 467-4114
                                Fax (202) 467-1625

                                *Counsel for Plaintiff*



AMERICAN UNIVERSITY
W  A  S  H  I  N  G  T  O  N ,  D C

### STUDENT CONDUCT CODE

**PREAMBLE**

The central commitment of American University is to the development of thoughtful, responsible human beings in the context of a challenging yet supportive academic community.

(American University, *Statement of Common Purpose*)

To achieve its ends, an academic community requires the knowledge, integrity, and decency of its members. In turn, the community helps individuals develop habits and values that will enable them to achieve personal satisfaction and to contribute to a better world.  This Student Conduct Code is designed to benefit the American University community and to assist in forming the highest standards of ethics and morals among its members. It fosters the university's commitment to excellence and equity and affirms the shared values that make community life possible.

**I.    AUTHORITY FOR STUDENT DISCIPLINE**

Ultimate authority for all university policy is vested in the Board of Trustees of American University.  Nonacademic disciplinary authority has been delegated by the president to the vice president of student services to implement student conduct policies and take all necessary and appropriate action to protect the safety and well-being of the campus community.

The Board of Trustees reserves the right to review, and to take any action it deems necessary, in any disciplinary case.  In practice, the resolution of nonacademic disciplinary cases may involve an array of university administrators and committees of students, staff, and faculty. Students are asked to assume positions of responsibility in the university judicial system in order to contribute their skills and insights to the resolution of disciplinary cases. The university reserves the right to amend this Student Conduct Code at any time according to established procedures.

**II.    RESPONSIBILITIES AND RIGHTS**

A.    Every student has a duty to understand and abide by the rules and regulations of the university. Ignorance of a rule or regulation will not be an acceptable defense.

B.    Students accused of disciplinary violations are entitled to the following procedural protections:

1.    to be informed of the charges against them
2.    to request an informal resolution of the case
3.    to be allowed reasonable time to prepare a defense
4.    to hear and respond to evidence upon which a charge is based
5.    to call and examine relevant witnesses in disciplinary hearings
6.    to be assured of confidentiality according to the terms of the university policy on confidentiality
7.    to request that any person conducting a disciplinary conference, or serving as a Conduct Council member or hearing officer, be disqualified on the grounds of personal bias

8.  to be provided with an opportunity to review these rights before any disciplinary conference or hearing
9.  to be considered not responsible for the charges until found responsible by clear and convincing evidence

## III.    JURISDICTION

The Student Conduct Code ("Code") is the university's policy for nonacademic conduct offenses and applies to all students, student groups, and student organizations at American University, including students at the Washington College of Law ("WCL"). However, alleged infractions of prohibited conduct by WCL students will not be subject to the resolution mechanism described in this policy, but will be processed within the WCL judicial system.

The university retains jurisdiction over alleged infractions that occur during a student's matriculation or attendance at the university, including winter, spring, and summer breaks, and periods of leave of absence from the university. Therefore, a hearing may be scheduled after a student has completed a program, withdrawn, or graduated from the university. Generally, the university will take disciplinary action for on-campus infractions of the Code. However, the university will take any and all necessary action to protect the safety and well-being of the campus community, including, but not limited to, taking disciplinary action against students whose behavior off-campus indicates that they pose a substantial danger to others. The university may take action against a student who is the subject of an adjudicated violation of state or federal law.

## IV.    VIOLATIONS OF LAW AND UNIVERSITY REGULATIONS

Students may be accountable both to civil authorities and to the university for acts that constitute violations of law and of this Code. Disciplinary action at the university will normally proceed while criminal proceedings are pending and will not be subject to challenge on the grounds that criminal charges involving the same incident have been dismissed or reduced.

## V.    DEFINITIONS

A.  "Aggravated violation"— a violation that resulted or foreseeably could have resulted in significant damage to persons or property or which otherwise posed a substantial threat to the stability and continuance of normal university or university sponsored activities.

B.  "Clear and convincing"— a measure of proof that produces a firm belief in the allegations presented. It is more than the standard of "preponderance of the evidence" and less than the standard of "beyond a reasonable doubt."

C.  "Disciplinary conference"— a forum in which a hearing officer meets with a student to adjudicate an alleged violation of the Code.

D.  "Disciplinary hearing"— a forum in which a panel of the Conduct Council meets with a student to adjudicate an alleged violation of the Code.

E.  "Group"— persons who are associated with each other but who have not complied with university requirements for recognition as an organization.

F.  "Harassment"— an intimidating, hostile, or coercive act which is intentional or persistent.

G.  "Hearing officer"— any student, staff, or faculty member who conducts disciplinary conferences or disciplinary hearings as set forth in Sections XIV and XV of this Code.

H.   "Institution" and "university" — American University and all of its undergraduate and graduate departments and programs.

I.   "Organization"— an association of persons that has met university requirements for formal recognition.

J.   "Reckless"— conduct which a reasonable person under similar circumstances should be expected to know would create a substantial risk of harm to persons or property or which would otherwise be likely to result in interference with normal university or university sponsored activities.

K.   "Relevant"— related to the charges at hand. Relevant information may be excluded by a hearing officer during a disciplinary conference or hearing if it is unfairly prejudicial.

L.   "University premises"— buildings and grounds owned, leased, operated, controlled, or supervised by the university.

M.   "University sponsored activity"— any activity on or off university premises that is specifically initiated or supervised by the university.

N.   "Weapon"— firearms, fireworks, explosives, metal knuckles, knives, or any other instrument designed or used to inflict injury to person or property.

## VI. PROHIBITED CONDUCT

This Code is not written with the specificity of a criminal statute, nor is it intended to cover every instance of potentially prohibited conduct. American University expects its students, wherever they are, to adhere to high standards of honor and good citizenship and to conduct themselves in a responsible manner that brings credit to themselves and the university. The following misconduct is subject to disciplinary action:

A.   physical abuse of any person, including, but not limited to, sexual assault and abuse

B.   conduct which threatens or endangers the health or safety of any person

C.   using, distributing, or manufacturing a weapon, or possessing any object produced as a weapon

D.   arson

E.   the sale, distribution, use, or possession of any illegal drug

F.   violation of university policies pertaining to the sale, distribution, use, or possession of alcohol

G.   violation of state or federal law

H.   intentionally initiating or causing to be initiated any false report, warning, or threat of fire, explosion, or other emergency

I.   theft of property or services or knowingly possessing stolen property

J.   harassment or intimidation

K.   in university matters not covered by the *Academic Integrity Code*: dishonesty; misrepresentation; fraud; forgery; or knowingly using false information, documents, or instruments of identification

L.    intentionally or recklessly destroying or damaging university property or the property of others

M.    entry, attempt to enter, or remaining without authority or permission in any university office, residence hall room, university sponsored event, or university premise

N.    tampering with, or unauthorized or fraudulent use of, campus telephone equipment, telephone credit cards, or access codes

O.    abuse of university computer equipment, networks, systems, or services

P.    intentionally or recklessly interfering with normal university or university sponsored activities, including, but not limited to, studying, teaching (including class sessions and office hours), research, university administration; or fire, police, or emergency services

Q.    disorderly conduct or interfering with the rights of other students

R.    illegal gambling or gaming, as defined by state or federal law

S.    willfully failing to comply with the directions of university officials, including public safety officers or residential life staff members, acting in performance of their duties

T.    unauthorized use of the university's corporate name, logo, or symbols

U.    unauthorized soliciting or canvassing by any individual, group, or organization

V.    violations of other published nonacademic university regulations or policies, including, but not limited to, policies related to discrimination and discriminatory harassment, sexual harassment, computer use, the residence halls, hazing, and amplification of sound

W.    attempt to engage in any of the above prohibited conduct

X.    violating the terms of any disciplinary sanction imposed in accordance with this Code

## VII.    STANDARDS OF CLASSROOM BEHAVIOR

Primary responsibility for managing the classroom environment rests with the faculty. Students who engage in any prohibited or unlawful acts that result in disruption of a class may be directed by the faculty member to leave the class for the remainder of the class period. Longer suspensions from class or dismissal on disciplinary grounds may include interim suspension, as set forth in Section IX, and must be preceded by a disciplinary conference or hearing, as set forth in Sections XIV and XV of this Code. Academic dishonesty allegations are processed in accordance with procedures set forth in the *Academic Integrity Code* (Academic Regulations §80.00.00). Students will be subject to both the Student Conduct Code and the Academic Integrity Code in cases where there is a combination of alleged violations of academic and nonacademic regulations.

## VIII.    STUDENT GROUPS AND ORGANIZATIONS

Student groups and organizations may be charged with violations of this Code, as described below:

A.    A student group or organization and its officers may be held collectively and individually responsible when violations of this Code by those associated with the group or organization have received the consent or encouragement of the group or organization or of the group's or organization's leaders or officers.

B.    The officers or leaders or any identifiable spokesperson for a student group or organization may be ordered by the director of judicial affairs and mediation services to take appropriate action designed to prevent or end violations of this Code by the group or organization. Failure to make reasonable efforts to comply with the director's order shall be considered a violation of this Code, both by the officers, leaders, or spokespersons for the group or organization and by the group or organization itself.

C.    Sanctions for group or organization misconduct may include revocation or denial of registration or recognition, as well as other appropriate sanctions.

D.    Student organizations, including fraternities and sororities, may appoint panels or boards to mediate disputes and enforce association bylaws. Decisions or recommendations by such panels or boards do not constitute official action by the university.

IX.    **INTERIM SUSPENSION**

The dean of students or designee may suspend a student from the university for an interim period pending disciplinary or criminal proceedings or medical evaluation regarding behavior relevant to such proceedings. The interim suspension will be effective immediately without prior notice whenever there is evidence that the continued presence of the student at the university poses a substantial and immediate threat to him or herself, to others, or to the stability and continuance of normal university functions. Interim suspension excludes students from university premises and other privileges or activities. A student suspended on an interim basis will be given a prompt opportunity to appear personally before the dean of students or designee in order to discuss the following issues only: (a) the reliability of the information concerning the student's conduct, including the matter of identity; (b) whether the conduct and surrounding circumstances reasonably indicate that the continued presence of the student on university premises poses a substantial and immediate threat to him or herself, to others, or to the stability and continuance of normal university functions.

X.    **CONDUCT COUNCIL**

The Conduct Council will consist of 12 students nominated by the Student Confederation, Residence Hall Association, and the Graduate Student Association; four faculty members nominated by the University Senate; and four staff members nominated by the University Staff Council. The dean of students, with the approval of the vice president of student services, will appoint members to the Conduct Council. Among other duties, members of the Conduct Council will sit on hearing panels designed to resolve allegations referred for a hearing in accordance with Section XV of this Code. The director of judicial affairs and mediation services will be responsible for training and providing administrative support to the Council.

A.    The director of judicial affairs and mediation services will select a hearing panel from the Conduct Council comprised of five persons: three students, one faculty member, and one staff member.

B.    An ad hoc hearing panel of the Conduct Council may be established by the director of judicial affairs and mediation services whenever the Conduct Council is not constituted, or is otherwise unable to hear a case. An ad hoc Conduct Council hearing panel will be composed at a minimum of one faculty member nominated by the chair of the University Senate, one student nominated by the director of judicial affairs and mediation services or designee, and one staff member nominated by the chair of the University Staff Council. The dean of students will appoint members to an ad hoc hearing panel of the Conduct Council.

C.   Both the findings and the sanctions determined by Conduct Council hearing panels are recommendations to the dean of students who will render a decision.

D.   Members of the Conduct Council who are charged with any violation of this Code, other university policies, or a criminal offense may be temporarily suspended from their positions by the director of judicial affairs and mediation services while charges against them are pending. Members found responsible for any such violation or offense may be disqualified from any further participation in the university judicial system. Additional grounds and procedures for removal may be established by the director of judicial affairs and mediation services.

## XI.   ADVISORS

At their own discretion, complainants and respondents may be advised by an American University student, faculty, or staff member.  The role of advisors is limited to consultation. While advisors may be present at disciplinary conferences or hearings, they may not address hearing bodies, speak in disciplinary conferences, or question witnesses. Because the purpose of this disciplinary process is to provide a fair review of alleged violations of this Code rather than a formal legal proceeding, participation of persons acting as legal counsel is not permitted.

## XII.   STANDARDS OF DUE PROCESS

Students who may be subject to dismissal, suspension, or removal from university housing will be referred to a disciplinary hearing, as specified in Section XV of this Code. Students who may be subject to lesser sanctions for nonacademic misconduct will be referred to a disciplinary conference, as set forth in Section XIV of this Code. Formal rules of evidence will not be applied, nor will deviations from prescribed procedures necessarily invalidate a decision, unless significant prejudice to a student respondent or the university may result.

## XIII.   PROCEDURES FOR CASE RESOLUTION

A.   Mediation is encouraged as an alternative means to resolve some disciplinary cases. The director of judicial affairs and mediation services will inform complainants and respondents of the availability of mediation resources. The director, at his or her discretion, may decline to process a complaint until the parties in a nonacademic misconduct case make a reasonable attempt to achieve a mediated settlement. To be binding in a disciplinary case, any mediated settlement must be approved by the director of judicial affairs and mediation services. If mediation fails, the case will be forwarded for a disciplinary conference.

B.   Any American University student, faculty, or staff member may refer a student, student group, or organization suspected of violating this Code to the director of judicial affairs and mediation services. Those referring cases are normally expected to serve as the complainant and to present relevant evidence in hearings or disciplinary conferences. The complainant may request the assistance of an advisor, as set forth in Section XI of this Code. A written complaint must be filed with the director of judicial affairs and mediation services within 15 days (excluding weekends, official university holidays, winter and spring breaks) of the occurrence or discovery of the alleged infraction(s). Complainants filing cases after the 15-day filing period may request in writing an extension of the filing period from the director of judicial affairs and mediation services. Requests for waivers of the filing period may be made up to one major semester (fall or spring) after the date of discovery of the alleged incident.  In such cases, the director will evaluate whether a reasonable person might be justified in filing after the 15-day

period due to the nature of the charges alleged. The deadline for filing a case will also be extended if there is an alleged violation of the university's discrimination and discriminatory harassment policy. In such cases, the complainant will have one year from the date of discovery to file a complaint.

C.     The director of judicial affairs and mediation services will conduct a preliminary review to determine whether the alleged misconduct, if proved, might result in dismissal, suspension, or removal from university housing. Students who may be subject to removal from university housing , suspension, or dismissal, will be entitled to a disciplinary hearing before a Conduct Council panel consisting of five members of the Conduct Council. Students who are unlikely to be subject to removal from university housing, suspension, or dismissal will be referred to a disciplinary conference with a hearing officer, as set forth in Section XIV of this Code.

D.     Students referred for a disciplinary hearing by the director of judicial affairs and mediation services may elect to have their cases resolved in a disciplinary conference in accordance with Section XIV of this Code. Such an election must be in writing, affirming that the student is aware a hearing is being waived. The full range of sanctions may be imposed, including removal from university housing, suspension, or dismissal from the university. Both the findings and the sanctions determined by the hearing officer will be regarded as recommendations to the dean of students in the case of removal from university housing, suspension, or dismissal.

E.     Hearing panel members, hearing officers, complainants, and respondents will have the right to question witnesses.

## XIV.     PROCEDURES FOR DISCIPLINARY CONFERENCES

Students accused of nonacademic offenses that will likely result in penalties less than removal from university housing, suspension, or dismissal are subject to a disciplinary conference with a hearing officer. The director of judicial affairs and mediation services or designee will serve as the hearing officer and conduct the disciplinary conference. Any party may challenge a hearing officer on the ground of personal bias. The hearing officer may be disqualified by the director of judicial affairs and mediation services or the dean of students. The hearing officer will make inquiries into evidence if necessary to ensure a just outcome of the case. In complex cases, the director of judicial affairs and mediation services, at his or her discretion, may refer the case to a disciplinary conference board. Conference board members will be selected by the director. The board will consist of one hearing officer and two Conduct Council members, including at least one student. Decisions of the disciplinary conference board are determined by majority vote and are final. The director of judicial affairs and mediation services will review all disciplinary conference decisions to ensure their procedural integrity and consistency with precedent. In cases where the director of judicial affairs and mediation services serves as the hearing officer, the dean of students will conduct the review.

The following procedural protections are provided to respondents in disciplinary conferences:

A.     written notice of the specific charges at least three business days prior to the scheduled conference with additional time at the director's discretion

B.     reasonable access to the case file prior to and during the conference

C.     an opportunity to respond to the evidence

D.     a right to be accompanied by an advisor, as provided in Section XI of this Code

XV.     **PROCEDURES FOR DISCIPLINARY HEARINGS**

Students accused of nonacademic offenses that will likely result in sanctions such as removal from university housing, suspension, or dismissal are subject to a disciplinary hearing convened by a hearing officer before Conduct Council members.

A.     The director of judicial affairs and mediation services or designee will serve as the hearing officer and conduct the hearing. He or she may participate in hearing panel deliberations and discussions but cannot vote. The hearing officer is responsible for final decisions on all procedural issues and may modify hearing procedures, if necessary, to ensure a fair and expedient administration of the hearing.

B.     The director of judicial affairs and mediation services will give respondents notice of the hearing date and the specific charges against them at least five business days in advance of the hearing. Respondents will be accorded reasonable access to the case file, which will be retained in the office of the director of judicial affairs and mediation services.

C.     Respondents who fail to appear after proper notice will be deemed to have pled no contest to the charges pending against them. Nonetheless, the complainant will be required to present a case that meets the standard of clear and convincing evidence.

D.     All hearings are closed to the public unless parties mutually request that a hearing be open to the public. The hearing officer will ordinarily honor such requests unless there are overriding interests to have the hearing closed (e.g., to protect the identity of a sexual harassment victim). Even in a public hearing, the hearing panel may limit the number of observers based on the physical limitations of the hearing room.

E.     The hearing officer will exercise control over the proceedings to avoid needless consumption of time and to achieve orderly completion of the hearing. Any person, including the accused student, who disrupts a hearing may be excluded by the hearing officer.

F.     The university will make audio recordings of hearings. A transcript of the hearing will be provided, upon written request by the respondent, who must pay for the cost of the transcript service.

G.     Any party may challenge a panel member or the hearing officer on the grounds of personal bias. Hearing panel members may be disqualified by the hearing officer. A hearing officer may be disqualified by a majority vote of the members of the hearing panel. Votes will be taken by secret ballot.

H.     Witnesses will be asked to affirm that their testimony is truthful and may be subject to charges of violating this Code by intentionally providing false information to the university.

I.     Witnesses, other than the complainant and the respondent, will be excluded from the hearing except when providing testimony to the hearing panel. All parties, the witnesses, and the public will be excluded during panel deliberations, which will not be recorded or transcribed.

J.     The charges against the respondent must be established by clear and convincing evidence.

K.     Formal rules of evidence will not be applicable in disciplinary proceedings conducted pursuant to this Code. The hearing officer will abide by the rules of confidentiality and privilege, but will admit all other matters into evidence which are relevant. The respondent may challenge the relevance of evidence. Irrelevant or unduly repetitious evidence may be excluded by the hearing officer.

L.     Complainants and respondents will be accorded an opportunity to ask relevant questions of witnesses who testify at the hearing.

M.     Affidavits will be admitted into evidence only if signed by the affiant and witnessed by the director of judicial affairs and mediation services or designee.

N.     A determination of responsibility will be followed by a supplemental proceeding in which either party may submit relevant evidence or make relevant statements concerning the appropriate sanction to be imposed. The past disciplinary record of the respondent will be supplied to the panel only during the supplementary proceeding.

O.     Any determination of responsibility by majority vote of the hearing board will be supported by written findings, which will be placed in the case file and made available to the student respondent before a final decision is rendered by the dean of students.

## XVI.    SANCTIONS

Sanctions for violating provisions, including, but not limited to (a) through (k) in Section VI of this Code may result in  suspension or dismissal from the university.  Repeated or aggravated violations of any part of this Code may also result in suspension or dismissal.  Significant mitigating or aggravating factors will be considered when sanctions are imposed, including the present demeanor and past disciplinary record of the offender, the nature of the offense, and the severity of any damage, injury or harm resulting from it. Sanctions which may be imposed in accordance with this Code include, but are not limited to:

A.     "Warning"— notice, oral or written, that continuation or repetition of prohibited conduct may be cause for additional disciplinary action.

B.     "Censure" — a written reprimand for violation of specified regulations, including a warning that continuation or repetition of prohibited conduct may be cause for additional disciplinary action.

C.     "Disciplinary Probation" — exclusion from participation in privileged or extra-curricular institutional activities for a specified period of time. Additional restrictions or conditions may also be imposed. Violations of the terms of disciplinary probation, or any other violation of this Code during the period of probation, may result in removal from university housing, suspension, or dismissal from the university.

D.     "Restitution" — repayment of the direct cost to the university for damages resulting from a violation of this Code.

E.     "Removal from University Housing" — denial of housing privileges.

F.     "Suspension" — exclusion from university premises and other privileges or activities as set forth in the suspension notice. This action will be permanently recorded on the student's academic transcript.

G.     "Dismissal" — permanent termination of student status and exclusion from university premises, privileges, and activities. This action will be permanently recorded on the student's academic transcript.

H.     "Other Sanctions" — other sanctions may be imposed instead of or in addition to those specified in sections (A) through (G) of this section.  For example, students may be offered the option of voluntary withdrawal rather than suspension. Service or research projects may also be assigned.

## XVII.   APPEALS

Any disciplinary determination arrived at through a disciplinary hearing and resulting in removal from university housing, suspension, or dismissal may be appealed to the vice president of student services by the respondent.

A.  The appeal must be in writing and delivered to the Office of Judicial Affairs and Mediation Services within seven business days after the notice of removal from university housing, suspension, or dismissal is delivered to the address on record for the student in the Office of the Registrar.

B.  Appeals will be reviewed by an appellate board of the Conduct Council to determine their viability. The appellate board will consist of one student, one faculty member, and one staff member selected from the Conduct Council by the director of judicial affairs and mediation services. The appellate board will meet as soon as possible after the appeal is received.

C.  The appellate board will determine viability based on whether there is new information that significantly alters the finding of fact, evidence of improper procedure, findings that are against the weight of the evidence, or excessive sanctions. Only when deemed viable will the appeal be forwarded to the vice president of student services for review and decision. Decisions of the appellate board about the viability of the appeal are determined by majority vote and are final.

D.  The appellate board may deny the request for appeal and affirm the findings of the dean of students or grant the request for appeal and forward its recommendations to the vice president of student services.

E.  Appeals will be decided based on the report filed by the hearing officer and the appellate board, the respondent's written statement, and any written response or memoranda prepared by university officials. All written materials considered by the appellate board and vice president of student services will be subject to inspection by the respondent. The respondent may request an opportunity to discuss the written materials in person with the vice president of student services. New hearings will not be conducted on appeal. Decisions rendered by the vice president of student services are final.

F.  The following standards will apply when appeals are considered by the vice president of student services:

   1.  Sanctions may be reduced only if found to be substantially disproportionate to the offense.

   2.  Cases may be remanded for rehearing only if specified procedural errors or errors in interpretation of university regulations were so substantial as to deny the student a fair hearing, or if new and significant evidence becomes available that could not have been discovered by a properly diligent student before or during the original hearing.

   3.  Cases may be dismissed if the finding is held to be unsupported by the evidence.

G.  The imposition of sanctions will be deferred while an appeal is pending, unless, in the discretion of the vice president of student services, the continued presence of the student in the residence halls or on the campus poses a substantial threat to him or herself, to others, or to the stability and continuance of normal university functions.

## XVIII.  DISCIPLINARY FILES AND RECORDS

Case referrals may result in the development of a disciplinary file in the name of the respondent, which will be voided if the student is found not responsible for violating the Code. Voided files will be so marked, will not be kept with active

disciplinary records, and will not constitute disciplinary records. Voided files will normally be destroyed after five years. The files of students found responsible for any charges against them will normally be retained as a disciplinary record for at least five years from the date of the letter providing notice of final disciplinary action.

*Senate Action, April 1999.*
*President and provost approval, June 1999.*
*Effective summer 1999.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                  )
JOHN DOE                          )
                                  )
                    Plaintiff,    )
                                  )
        v.                        )    Civil Action No. _____
                                  )
AMERICAN UNIVERSITY, <u>et</u> <u>al</u>.,   )
                                  )
                    Defendants.)
_____)

<u>RULE 205 CERTIFICATION</u>

Pursuant to Rule 205(a) of the rules of this Court, I certify that I am one of the counsel for plaintiff John Doe and that actual notice of the time of making the application and copies of all pleadings and papers relating to the Temporary Restraining Order that will be filed this date in this action as set forth on the attached Schedule A have been furnished to the Defendant, Katsura Kurita Beltz, American University, Director of Judicial and Mediation Services and as to Defendant American University through its agent Katsura Kurita Beltz.

SHARP & ASSOCIATES

By:  _____/s/_____
     Stephen W. Grafman (#32912)
     William F. Boyer (#479421)
     1215 19th Street, NW
     Washington, D.C. 20036
     Tele. (202) 467-4114
     Fax. (202) 467-1625

     *Counsel for Plaintiffs*

-1-

November 15, 2006

<u>Schedule A</u>
<u>Rule 205 Certification</u>

Verified Complaint w/ civil cover sheet

Motion to File Anonymously, with Supporting Memorandum and proposed Order

Motion for TRO and Other Injunctive Relief with Supporting Memorandum and Proposed Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
JOHN DOE                      )
                              )
               Plaintiff,     )
                              )
     v.                       )     Civil Action No._____
                              )
AMERICAN UNIVERSITY et al.    )
                              )
                              )
               Defendants.)
_____)


<u>TEMPORARY RESTRAINING ORDER</u>

     This matter came to be heard upon plaintiff Doe's
motion for a temporary restraining order, supported by the
verified complaint herein, through which John Doe
("Doe")seeks to enjoin the defendants  American University
("AU") and Katsura Kurita Beltz (collectively "Defendants")
from proceeding with a student hearing against plaintiff
now set to commence at 1 pm on Thursday, November 16, 2006.

     It appearing to the Court that there is considerable
issue as to whether the student hearing at issue meets
requisite equitable standards and further that the
plaintiffs having made a sufficient showing that he will
suffer irreparable harm were this proceeding to go forward
at this time and there being a sufficient showing that Doe
is likely to prevail on the merits, that there is no

1

adequate remedy at law, that there will be no harm to the
Defendants through the entry of this order, and that the
public interest will be served by the issuance of this
restraining order, it is this _____ day of November 2006
hereby:

ORDERED that the Defendant, and each of them and each
of them associated with them with respect to this proposed
hearing are jointly and severally restrained and enjoined
from proceeding with a student hearing pursuant to the AU
Student Conduct Code or otherwise as to Doe until
completion of a preliminary hearing in this case now
scheduled for _____, 2006, and it is further


ORDERED that trial of this action on the merits shall
be advanced and consolidated with the preliminary
injunction hearing; and it is further


ORDERED that no security is deemed necessary or
otherwise appropriate in conjunction with this issuance of
this order.


_____
Judge


2