UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JOHN DOE

               Plaintiff,

     v.

AMERICAN UNIVERSITY et al.

               Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.
1:06-cv-01959

Judge Ricardo M. Urbina

**ERRATA SHEET**

    Plaintiff John Doe respectfully submits this Errata Sheet and accompanying Memorandum in Support of Temporary Restraining Order and Preliminary Injunctive Relief.  The accompanying Memorandum, which has been edited to correct non-substantive typographical errors, relates to and is intended to replace the previously filed Memorandum (filed November 15, 2006; no docket entry number currently available).

Dated:   November 17, 2006

SHARP & ASSOCIATES

_____/s/_____
Stephen W. Grafman (#32912)
William F. Boyer (#479421)
1215 19th Street, N.W.
Washington, D.C. 20036
Tele. (202) 467-4114
Fax (202) 467-1625

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Errata Sheet and accompanying Memorandum in Support of Temporary Restraining Order and Preliminary Injunctive Relief were mailed postage prepaid, first class, to Hisham R.O. Khalid, Office of General Counsel, American University, 4400 Massachusetts Avenue NW, Washington, DC 20016, this 17th day of November, 2006.


_____/s/_____
William F. Boyer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JOHN DOE                        )
                                )
                                )
               Plaintiff,       )
                                )
      v.                        )  Civil Action No.
                                )  1:06-cv-01959
                                )
AMERICAN UNIVERSITY et al.      )  Judge Ricardo M. Urbina
                                )
                                )
               Defendants.      )
_____)

PLAINTIFF'S MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff John Doe submits this memorandum[1] in support
of his application for a temporary restraining order and
preliminary injunction.  He adopts and incorporates herein
his verified complaint filed simultaneously herewith.

Plaintiff seeks emergency relief to enjoin the
Defendants from holding the Ad Hoc Conduct Council Hearing
(the "Hearing") currently scheduled for this Thursday
November 16, 2006, at 1 pm, which if held, will be in
derivation of his right to a fair and equitable hearing.

I.    BACKGROUND

      A.    Factual Predicate

Doe is a 21 year old junior at the American University
("AU") charged with the alleged rape of an AU undergraduate

---

[1] Doe resubmits this Memorandum with typographical errors corrected.  No
substantive changes have been made.

(the "Female Student")[2] on the late night/early morning
hours of September 19/20, 2006 in what was by no means a
chance encounter.  Indeed, they had engaged in consensual
intercourse the previous evening,[3] and the following evening
(i.e. the time of the alleged rape)[4] she returned
voluntarily to Doe's off-campus home around 11:30 pm, after
an instant message exchange where they again had consensual
sex.

The now-disputed intercourse took place in Doe's
bedroom just as it had the night before.  Both parties
acknowledge the incident was preceded by drinking.  Female
Student stated in her instant-message to Doe preceding sex
that she had engaged in a beer-drinking "power hour" with
her girlfriends, and, after further drinking with Doe, she
voluntarily went to his bedroom.  What occurred thereafter,
Female Student now calls rape.  Doe vehemently disputes
this allegation.

Female Student made a report of the alleged rape to
the campus police (that is, the AU Department of Public

---

[2] The name of the Female Student is omitted as a courtesy, and is not in
any way an indication as to the probity of her complaint.

[3] Interestingly the judicial complaint form makes no mention of this
previous evening.

[4] If found responsible Doe could be expelled from school, and a
transcript of the proceedings made available to the Metropolitan Police
Department.  A conviction for rape in the District of Columbia can
result in a sentence of up to life in prison.

Safety), who in turn notified the Washington, D.C. Metropolitan Police Department. Notwithstanding that Female Student claimed she was struck in the face with a closed fist by Doe, Defendant Beltz advised there are no photographs, no medical examination reports and no physical evidence.[5] Moreover, Female Student declined to press charges, and seemingly only changed her mind after further discussions with a girl friend who first advised campus police that Female Student "may" have changed her mind.

It was not until 10 days later that there appeared an underlined unsigned 2 page typed single spaced "Confidential Statement" addressed to JAMS (the AU Judicial Affairs and Mediation Services) with a copy shown to the campus police officer Sergeant Sifri.[6]

Subsequently, an AU Judicial Complaint was prepared on October 2, 2006, with Sgt Sifri as the complaining witness rather than Female Student, the allegedly aggrieved party. The unsigned statement advises that Female Student would not attend the Hearing.[7]

---

[5] November 1, 2006 letter from Katsura Kurita Beltz, the AU Director of Judicial Affairs and Mediation Services.

[6] It is unclear who prepared this statement since it is unsigned, and further the Judicial Complaint Form formally initiating the student proceedings was not signed until October 2, 2006.

[7] Specifically the statement advises: "I am writing this statement in place of my presence at the hearing. Given the arduous circumstances, I am unwilling and unable to face the emotional and physical stress of

B.    <u>The Hearing Procedure</u>

The Hearing is convened pursuant to the AU Student Conduct Code ("SCC")[8] which specifies at SCC-XV that, among other things, it applies to students accused of nonacademic offenses "that will likely result in sanctions...such as dismissal from school."[9]

The procedures tightly control the manner in which a hearing may be held, and raise significant issues as to whether a student may fully and fairly defend against such serious allegations as rape, including, but not necessarily limited to the following:

i. <u>No right to legal counsel</u>

The SCC expressly prohibits a student from having lawyer representation at the Hearing, specifying at SCC-XI "participation of persons acting as legal counsel is not permitted."  According to the SCC, this is justified because at issue is a disciplinary process "to provide fair review of alleged violations" rather than "formal legal determinations."

---

presenting myself before my attacker; therefore I give my full permission to Sergeant Sigfri to speak on my behalf."

[8] A copy of the SCC is attached hereto as Exhibit 1.

[9] SCC-XVI G. defines "Dismissal" as "permanent termination of student and exclusion from university premises, privileges and activities. This action will be permanent and recorded on the student's academic transcript."

The SCC does allow for an "advisor" who can be an AU student, faculty, or staff member; yet even then the advisor "may not address hearing bodies, speak in disciplinary conferences, or question witnesses." SCC-XI

      ii. <u>No guaranteed right to confront one's accuser</u>

The SCC XV-L specifies that "[c]omplainants and respondents will be afforded an opportunity to ask relevant questions of witnesses who testify at the hearing." However, there is no subpoena power, and where as here, a decision is made to have a stand-in complainant for the alleged aggrieved party, there is no ability to confront the accuser.

      iii. <u>Absence of a neutral and detached hearing process</u>

The procedure for case resolution provides the Director of the Judicial Affairs and Mediation Services ("JAMS") with overarching authority in what then becomes an inherently flawed process, tilted in favor of the accuser who may or may not be present.  This is seen in, among other contexts, the powers of the JAMS Director to:

    (i)    decide whether a case will go to a hearing (SCC-XV C.)

    (ii)    train the panel of potential members

    (iii)    select the actual members for any particular

panel to be composed of five persons, three students, on faculty member, and one staff member (SCC-X A.)

(iv)    suspend panel members from their positions and otherwise disqualify them (SCC-X D. & SCC-XV G.)

(v)     serve as hearing officer with right to participate in hearing panel deliberations and discussions (albeit not vote)

(vi)    be responsible for final decisions on all procedural issues and may modify hearing procedures "to ensure a fair, expedient administration of the hearing" (SCC-XV-A)

(vii)   exercise control over the proceedings (SCC-XV E.)

II.   ANALYSIS OF THE ISSUE: THE STUDENT CONDUCT CODE AS IMPLEMENTED IN THE INSTANT CASE IS INEQUITABLE AND VIOLATIVE OF THE EDUCATION ACT OF 1972 AND IMPLEMENTING AUTHORITY, AND SAID VIOLATIONS ARE OF A CONSTITUTIONAL MAGNITUDE

A.    Title IX Mandates an Equitable Hearing

In student disciplinary proceedings, it is recognized that the constitutional rights of a student may turn upon

whether the school at issue is deemed to be a public or private institution of higher learning.  That is, the panoply of rights available to a student can at times turn upon whether he/she is enrolled in a publicly or privately funded school, with students at publicly funded schools afforded greater rights than those at private institutions.

Yet while this public / private dichotomy often is the beginning of the judicial analysis, it is not necessarily the end.  Indeed, as cogently stated in what is perhaps the leading treatise on education law, <u>The Law of Higher Education</u>[10], at section 1.5.3:

> The inapplicability of the federal Constitution to private schools does not necessarily mean that students, faculty members, and other members of the private school community have no legal rights assailable against the school.  There are other sources of legal rights, and these sources may sometimes resemble those found in the Constitution.

Thus while one may argue as to whether American University is a public or private institution,[11] it really makes no difference in the extant situation. That is, regardless of whether private or public, AU is subject to the Education Act of 1972, to wit: 20 U.S.C. § 1681 *et seq*. through which Congress has banned discrimination in higher

---

[10]  William A. Kaplan and Barbara A. Lee, <u>The Law of Higher Education</u>, The Jossey-Bass Publishing, Fourth Edition, San Francisco, 2006.
[11] American University owes its legal existence to the federal government having been chartered by a special act of Congress in 1893 (27 Stat. 476).  It is not privately incorporated, and whatever authority it has to function arises from its federal existence.

education based upon sex.  This is sometimes thought of most commonly in the context of intercollegiate sports (often referred to as Title IX), yet Title IX through the 1972 Act reaches far beyond this and directly impacts all schools that receive federal funding assistance, including federal student financial assistance and research grants.

Indeed as observed in the Kaplin and Lee treatise referenced above, this legislation "parallels and in some way is more protective than the equal protection provision of the 14th Amendment."  Id., at section 13.5.2 and 13.5.3.

While a private university might opt to turn down federal funding, most do not; and in any event for purposes of the matter sub judice it is clear that AU does not reject such funding, nor does it wish to even run the "risk" of loosing such funding.[12]

In implementing the 1972 Education Act, the Department of Education has published regulations stating what recipients of federal funding must do to comply with the

---

[12]  See e.g. the following statement on the AU website at http://www.american.edu/careercenter/employers/recruitingpolicies.html where it is stated:

> "…we [AU] are compelled by law (the Solomon Amendment) to allow the U.S. military to recruit on campus, or risk the loss of all federal funding assistance, which includes federal student financial assistance and research grants."

Lest there be any question as to the constitutionality of such a provision whether relating to the military or otherwise, this matter was resolved in the government's favor in Rumsfeld v. Forum for Academic and Institutional Rights, Inc.  547 U.S. _____ (March 6, 2006).

law. These regulations are found in Title 34 of the C.F.R.
Part 106, and more specifically for purposes of the matters
at issue at 34 C.F.R. 106.8 which states:

> A recipient[13] shall adopt and publish grievance
> procedures providing for prompt and equitable
> resolution of student and employee complaints alleging
> any action which would be prohibited by this part.

These "equitable" procedures thus mandated for
education institutions receiving federal funding encompass
procedures to hear and resolve complaints of sexual
discrimination now generally recognized to include acts not
only of sexual harassment, but sexual assault as well.
Such procedures, if they are to be equitable must also
encompass equitable procedures for the individual accused
as well as for the accuser.  While judicial authority
addressing this issue is scant, [14] it virtually goes without
saying that a procedure that is not "equitable" to both
accused and accused is inherently inequitable.

B.    The Inequity of the Student Conduct Code

The SCC does not provide for the requisite "equitable"

---

[13] A recipient is defined in these regulations at 34 C.F.R.106.2 (i) to
include "any public or private agency, institution, or organization, or
other entity, or any person, to whom Federal financial assistance is
extended directly or though another recipient and which operates an
education program or activity which revives such assistance, including
any subunit, successor, assignee, or transferee thereof."  AU is
clearly such an institution.
[14]  See generally, FIRE's Guide to Due Process and Fair Procedure on
Campus, Harvey Silvergate and Josh Gewolb, at Page 49, Published
November 29, 2004, and accessible online at:
http://www.thefire.org/pdfs/due_process_3.pdf. Last visited 15 November
2006.

procedures, either in basic structure or in implementation. In short, the Code, while using politically correct language such as 'fairness' or 'student due process', simply does not live up to the verbiage.  The more serious of these deficiencies are referenced in the accompanying verified complaint which are adopted and incorporated herein by reference, and as discussed previously herein

One really need not go further then to recognize that if the SCC allows a claim as serious as rape to be pursued against Doe with no opportunity to face his accuser, the resulting proceeding is anathema to a civilized society. Whether a public school, a private school, or just as an issue of equity and of fundamental fairness, denying the right of confrontation is nothing short of outrageous.

The Supreme Court has addressed this confrontation issue on various occasions, and has emphasized the critical importance inherent in the right to face one's accuser. See, e.g. Coy v. Iowa, 487 U.S. 1012 (1988).  Among the many cogent and compelling reasons the Court noted is to allow the fact finding panel to observe the demeanor of the one making the accusations.  This becomes critically important here since this case is at best a "she said / he said" situation where it is impossible to reach a fair and equitable determination of credibility when one does not

have both he and she.

The absence of the right to counsel is likewise appalling in the context of this case where the potential consequences can reach far beyond the confines of American University in terms, for example, of the potential life-long impact of expulsion from college and criminal charges predicated no doubt in large measure on a transcript that can be made of these proceedings.

Perhaps the First Circuit said it best in a factually distinct yet analogous student hearing where the Court opined that "the risk involved in participation at the hearing is substantial with counsel present; without counsel it is enormous." Gabrilowitz v. Newman, 582 F.2d 100, 106 (1st Cir. 1978).

When combining the lack of confrontation with a lack of counsel, the word "equitable" in the context of the instant AU proceeding is oxymoronic.

Yet there is more, for the role of the JAMS Director is equally troublesome. She assumes virtually every conceivable role: she plays an active role in the referral of the charges to a student hearing; she trains those who may wish to sit on panels and then selects those for what case she believes appropriate; she serves as the presiding officer at the hearing, ruling on all procedural matters,

11

and then actively deliberates with the panel, albeit she does not vote.

The active role played by the defendant JAMS director in Doe's case is telling.  Among other things, she denied Doe a continuance for further preparation, denied him the right to the presence of counsel, and refused to provide information about who participated in the drafting of Female Statement or even the identity of panel members. On October 25, defendant Beltz indicated she would consider providing this information in advance of the hearing so an independent evaluation as to pre-hearing bias could be considered on Doe's behalf.  Shortly after noon today (November 15) this request was denied.  Moreover, although the JAMS Director pursuant to SCC-XV A "may modify hearing procedure, if necessary, to ensure a fair and expedient administration of the hearing," she had declined in that regard as well.

The SCC suffers a fatal flaw. In short, one cannot equitably be involved in the prosecution decision, the training of a panel, a participant in the deliberations, and as a judge all at the same time. The conflicts are inherent.  Just as an arrest warrant must be issued by a "neutral and detached magistrate[,]" Johnson v. United States, 333 U.S. 10, 13-14 (1948), so too fact finding even

in a student hearing of this nature, should be decided by
those who are neutral and detached.  Cf. Coolidge v. New
Hampshire, 403 U.S. 443 (1971).  This is particularly so in
the instant context where the hearing officer conducting
the hearing sits with the panel in deliberations making the
decisions.

     To say the JAMS director can be present but not vote
cures nothing and at best is a band-aid for a deeply
infected wound.  Indeed, as early as 1894 the Supreme Court
spoke in words equally applicable to the instant situation
where it stated in Starr v. United States:

>     the influence of the trial judge [here the
>     hearing officer/JAMS director] on the jury [here
>     the panel members] is necessarily and properly of
>     great weight, and that his [her] lightest word or
>     intimidation is received with deference and may
>     prove controlling.

153 U.S. 614, 626 (1894).  Whether taken singularly or
collectively, the result of these various deficiencies
is patently obvious; Doe cannot get an equitable
hearing under the circumstances at hand.

III.  TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF IS
      NECESSARY AND SHOULD BE GRANTED

     The criteria for granting temporary and preliminary
injunctive relief is well-established, as follows,
encompassing issues as to:

(1)  irreparable harm to the moving party if an

injunction is not granted;

(2)  likelihood of success on the merits of the lawsuit;

(3)  where lies the balance of injuries between the

parties; and

(4)  wherein lies the public interest.

See, e.g., CityFed Financial Corp. v. Office of Thrift

Supervision, 58 F.3d 738, 746-47 (D.C. Cir. 1995);

Washington Metropolitan Area Transit Comm'n ("WMATA") v.

Holiday Tours, Inc., 559 F.2d 841, 843-844 (D.C. Cir.

1977); Virginia Petroleum Jobbers Ass'n v. Federal Power

Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Petties v.

District of Columbia, 881 F. Supp. 63, 65 (D.D.C. 1995).

Whether to grant temporary and preliminary injunctive

relief requires an analysis of each factor based on "the

balance of equities."  WMATA, 559 F.2d at 844; see also

CityFed, 58 F.3d at 747 ("If the arguments for one factor

are particularly strong, an injunction may issue even if

the arguments in other areas are rather weak.").  Doe meets

all of the criteria.

A.   Doe Will Suffer Irreparable Harm Without An

Injunction

Plaintiff Doe will suffer irreparable injuries absent

immediate injunctive relief.  If the hearing proceeds as

scheduled he will be deprived of the right to counsel, the

14

right to confront his accuser, the right to a neutral
hearing / hearing officer, and stands the possibility of
being tainted for life as the result of this grossly unfair
and inequitable proceeding.

   B.    Doe Has a Substantial Case with Strong Likelihood
         of Success on the Merits

      To meet this criteria, Doe need show only "a
substantial case on the merits," partially where, as here,
the other criteria favor injunctive relief.  See Megapulse,
Inc. v. Lewis, 672 F.2d 959, 970 & n.56 (D.C. Cir. 1982);
WMATA, 559 F.2d at 843; Barnstead Broadcasting Corp. v.
Offshore Broadcasting Corp., 865 F. Supp. 2, 5-6 (D.D.C.
1994).

      Title IX of the Education Act of 1972 guarantees the
right to a "prompt and equitable" hearing when charged with
sexual assault, 34 C.F.R. Part 106.8(b), and Plaintiff may
bring suit to enforce his rights.  See, e.g., Cannon v.
University of Chicago, 441 U.S. 677 (1979) (recognizing
private cause of action for Title IX violation); Gebser v.
Lago Vista Independent School District, 524 U.S. 274 (1998)
(upholding award of monetary damages for Title IX
violation).

      Though precedents addressing the violations challenged
herein are few and far between, those that exist support in

15

principle the granting of relief to Doe herein.

First, courts have recognized that students facing academic disciplinary hearings for alleged criminal conduct have, at a bare minimum, the right to have an attorney present to advise them during the academic disciplinary hearing.  See, e.g., Gabrilowitz v. Newman, 582 F.2d 100 (1st Cir. 1978).  In Gabrilowitz, as here, the court was asked to enforce the right of the student to have counsel present at the disciplinary hearing because the factual predicate of that hearing was the same as that which could (and did) serve as the basis for criminal charges.  See Gabrilowitz, 582 F.2d 104-05.  The court observed: "If appellee chooses not to risk self-incrimination, he risks loss of his college degree.  If he chooses to protect his degree, he risks self-incrimination and possible imprisonment[.]" Id. at 105.  The Court of Appeals continued, quoting approvingly the District Court's observation that "[t]he consequences of this plaintiff's participation in what otherwise might be strictly a University affair, reaches well beyond the University walls in terms of potential effect upon this plaintiff." Id. at 106.

Second, it is indisputable that for this proceeding to be equitable Doe must have the opportunity to confront and

cross-examine his accuser.  Derived both from the Sixth
Amendment's Confrontation Clause as well as "our
understanding of its historical roots[,]" the accused is
guaranteed the right to personally examine his accuser, who
must be present, under oath, subject to cross examination,
and whose demeanor is capable of being observed by the
trier of fact.  Maryland v. Craig, 497 U.S. 836, 844-46
(1990).

     The right to confrontation is a bedrock principle
enshrined in the Constitution and understood to be an
indispensable requirement for the just and equitable
resolution of a dispute such as this.  See Mattox v. United
States, 15 U.S. 237, 242-243 (1895) ("the accused has an
opportunity, not only of testing the recollection and
sifting the conscience of the witness, but of compelling
him to stand face to face with the jury in order that they
may look at him, and judge by his demeanor upon the stand
and the manner in which he gives his testimony whether he
is worthy of belief.").

     In a case where the evidence amounts to nothing more
than a basic dispute between two persons, one of whose
futures hangs in the balance, the right of confrontation
assumes even greater importance.  See Winnick v. Manning,
460 F2d 545, 550 (2d Cir. 1972) (observing that even where

17

the right to cross examination is not ordinarily guaranteed, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." (citation omitted)).  Where, as here, it comes down to a choice between believing an accuser or an accused, cross-examination is essential.  See Flaim v. Medical College of Ohio, 418 F.3d 629, 641 (6th Cir. 2005). This right simply cannot be dispensed with in this instance if the hearing is to be equitable under any circumstance or interpretation of that word.

Finally, the hearing is inequitable and violates Doe's due process rights inasmuch as he is denied the right to a fair and impartial hearing officer.  In short, the hearing officer acts as policeman or "street officer", detective, prosecutor, and judge throughout the proceeding.  In no way is the hearing officer impartial – the system forecloses that possibility.

C.    The "Balance of Injuries" Favors An Injunction

Plaintiff will be severely injured by the deprivation of his right to an equitable hearing. No injury whatsoever will result to Defendant American University from the issuance of a temporary and preliminary injunction.  See McLaughlin v. Massachusetts Maritime Academy, 564 F.Supp.

809, 812 (D.Mass. 1983) (finding that "the public interest will not be affected adversely by the grant of injunctive relief" where academy denied student's request to have attorney present at disciplinary hearing).  The injunction would merely require that AU afford Doe the minimum rights necessary to an equitable hearing as noted herein.  Id. at 812-13.  This is not too much to ask.  See, e.g., Crowley v. United States Merchant Marine Academy, 985 F.Supp.292, (E.D.N.Y. 1997) (ordering academy to permit the accused student's attorney to be present throughout the hearing and to allow the accused student to confer with him during the hearing.); McLaughlin, supra, 564 F.Supp. at 812-13.

> D.    The Public Interest Will Be Served By An
>        Injunction

Public interest considerations favor the issuance of temporary and preliminary injunctive relief, as Doe will suffer irreparable injury while the "public interest will not be affected adversely by the grant of injunctive relief."  McLaughlin, 564 F.Supp. at 812.  Affording citizens the right to an equitable hearing which protects their rights unquestionably serves the public interest.  As such, an injunction should be granted.

IV.    CONCLUSION

Doe satisfies all of the criteria for granting

temporary and preliminary injunctive relief.  Accordingly, he respectfully requests that this Court temporarily and preliminarily enjoin the Defendants, as well as those associated therein and/or working in conjunction therewith from proceeding with the disciplinary hearing.

Dated:      November 15, 2006

SHARP & ASSOCIATES

_____/s/_____
Stephen W. Grafman (#32912)
William F. Boyer (#479421)
1215 19th Street, N.W.
Washington, D.C. 20036
Tele. (202) 467-4114
Fax (202) 467-1625

*Counsel for Plaintiff*